**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| Kunneman Properties LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Devon Energy Corp., et al.,<br><br>Defendants. | Case No. 26-CV-131-DES |

**CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & BRIEF IN SUPPORT**

Class Representative (or "Plaintiff") respectfully moves the Court for final approval of:

- the Proposed class action Settlement;
- the Notice of Settlement and Plan of Notice; and
- the Proposed Initial Plan of Allocation.

Class Representative's proposed Judgment is attached as **Exhibit 1**, and Class Representative's Proposed Initial Plan of Allocation Order is attached as **Exhibit 2**.[1] Class Representative submits that the Settlement is fair, reasonable, and adequate, and should be finally approved. **Ex. 3**, Decl. of Class Representative ("Class Rep. Decl."); *see also* Settlement Agreement ("SA"), Doc. 14-1 at 2.[2] This conclusion is strongly supported by the fact that no objections and no requests for exclusion have been received as of this filing.

## BACKGROUND

For the full background of this Litigation, Class Representative refers the Court to the Motion for Preliminary Approval (Doc. 14), the Joint Declaration of Class Counsel ("Joint

---

[1] The proposed judgment was attached as Exhibit 2 to the SA. Class Counsel will also submit native versions of the proposed orders to the Court in advance of the Final Fairness Hearing and after the opt-out and objection deadline (August 31, 2026) has passed.

[2] Capitalized terms not otherwise defined shall have the meaning ascribed to them in the SA.

Counsel Decl.") (**Exhibit 4**), the pleadings on file, and any other matters of which the Court may take judicial notice, all of which are incorporated as if fully set out here.

On June 15, 2026, the Court issued an order preliminarily approving the Settlement, approving the Plan of Notice, and setting a date of September 21, 2026, for the Final Fairness Hearing. Doc. 17 at 8, ¶ 13 ("Preliminary Approval Order"). The Court also approved the Notices of Proposed Settlement of Class Action ("Class Notices"), for mailing and publication. *Id.* at 5–7. The Court ordered that Notice be given to Class Members in accordance with the Plan of Notice as outlined in the Settlement Agreement and found that the Notices being provided "are the best notice practicable under the circumstances; constitute due and sufficient notice to all persons and entities entitled to receive such notice; and fully satisfy the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23." *Id.* at 5, ¶ 8. Since preliminary approval, Notice was mailed, by first-class mail, as ordered by the Court, to over 30,000 potential members of the Settlement Class between July 15, 2026, and the present. **Ex. 5**, Declaration of Jennifer Keough Regarding Notice of Settlement ("Keough Decl.") at 3, ¶¶ 7–9. Notice was also published on the settlement website and in *The Oklahoman* (July 20, 2026 edition) and *The Tulsa World* (July 21, 2026 edition), as directed in the Preliminary Approval Order. *Id.* at 3, ¶ 10.

Class certification remains proper here, as the facts regarding certification haven't changed since the Court entered the Preliminary Approval Order. A general plan of allocation was described in the Notices, along with the other material terms of the SA. *See* **Ex. 5**, Keough Decl. at Exs. B, C; *see also* SA, Doc. 14-1. Consistent with the Notices and the Plan of Allocation, the preliminary allocation shows the proposed distributions to each member of the Settlement Class and an amount of distribution. The Initial Plan of Allocation—prepared by Plaintiff's expert, Barbara Ley—assumes the Court approves the requests for reimbursement of Litigation Expenses and Administration, Notice, and Distribution Costs, and the requests for Plaintiff's Attorneys' Fees and a Case Contribution Award. The SA contemplates that Class Representative will move the Court for a Distribution Order based upon a Final Plan

of Allocation within sixty (60) days after the Effective Date, with the benefit of the Court's ruling on those requests. *See* Doc. 14-1 at 24, ¶ 6.4.

Following the mailing of the Notices and publication, members of the Settlement Class have forty-seven (47) days to request exclusion or file an objection. Zero requests for exclusion and zero objections have been received as of the time of this filing.[3] *See* **Ex. 5**, Keough Decl. at 4–5, ¶¶ 15–18. The zero opt-outs and objections to the Settlement—from the over 30,000 potential class members—thus far support the conclusion that the Settlement and Plan of Allocation are fair, adequate, reasonable, and in the best interests of the Settlement Class such that final approval should be granted.

## ARGUMENT & AUTHORITY

Class Representative submits that the Court should grant final approval of the Settlement. The procedure for reviewing a proposed class action settlement is a well-established two-step process:

1. **First**, the Court conducts a preliminary analysis to determine if the settlement should be preliminarily approved such that the class should be notified of the pendency of a proposed settlement. Manual for Complex Litigation § 21.632 (4th ed. 2004).

2. **Second**, the class is notified and provided an opportunity to be heard at a fairness hearing before the settlement is finally approved. Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.25, at 38 (4th ed. 2002).

The Court completed the first step with its Preliminary Approval Order, and notice was effectuated pursuant to the terms of the SA and in the form and manner approved by the Court. *See* **Ex. 5**, Keough Decl. at 3–4, ¶¶ 7–14. As to the second step, courts in the Tenth Circuit

[3] Because this Motion is due before the exclusion and objection deadline (August 31, 2026), Class Representative will submit a supplement detailing the requests for exclusion and objections, if any, received and indicate those that were properly submitted.

confirm that class certification remains proper and then consider four factors in determining whether to finally approve a class action settlement:

a. Whether the proposed settlement was fairly and honestly negotiated;
b. Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
c. Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
d. Whether, in the parties' judgment, the settlement is fair and reasonable.

*See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *see also* Fed. R. Civ. P. 23(e)(2). Each factor supports final approval of the Settlement here.

**1. The Court Properly Certified the Settlement Class and Should Confirm this Finding by Finally Certifying the Settlement Class Under Rule 23**

The Court must find class certification remains appropriate for settlement purposes. The Court already certified the following Settlement Class:

> All non-excluded persons or entities who are royalty owners in Oklahoma wells who received royalty payments from Devon for the Claim Period for the Class Wells operated by Devon. The Class claims relate to royalty payments for gas and its constituents (such as residue gas, natural gas liquids, helium, nitrogen, or drip condensate).
>
> Excluded from the Settlement Class are: (1) Devon, its affiliates, predecessors, and employees, officers, and directors; (2) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (3) publicly traded oil and gas companies and their affiliates; (4) Fortis Sooner Trend, LLC, Fortis Minerals II, LLC, FMII STM, LLC, Sooner Trend Minerals, LLC, Phenom Minerals, LLC, Charles David Nutley, Danny George, Dan McClure, Kelly McClure Callant, C. Benjamin Nutley, White River Royalties, LLC, and their relatives, affiliates, successors, and assigns; (5) persons or entities that Plaintiff's counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; (6) any Indian tribe as defined at 30 U.S.C. § 1702(4) or Indian allottee as defined at 30 U.S.C. § 1702(2); and (7) officers of the Court.

Doc. 17 at 2–3, ¶ 3. Class certification remains proper under Rule 23(a) and (b)(3) for settlement purposes for the reasons set forth in the Preliminary Approval Motion (*see* Doc. 14). Put simply, nothing has changed since the Preliminary Approval Order to call into question the propriety of class certification. And Defendants consent to certification of the Settlement Class for the purpose of settlement.

The prerequisites for class certification under Rule 23(a) and (b)(3) are satisfied. First, Rule 23(a)(1)'s numerosity requirement is satisfied because the Settlement Class consists of over 30,000 owners, whose joinder would be impracticable. **Ex. 5**, Keough Decl. at 2–3, ¶¶ 4–9; *see also Trevizo v. Adams*, 455 F.3d 1155, 1161–62 (10th Cir. 2006). Second, Rule 23(a)(2)'s commonality requirement is met because many questions of law and fact exist that could be answered uniformly for the Settlement Class using common evidence. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see also Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class") (internal citations omitted).

These common issues stem from a common body of law: the law of the State of Oklahoma on gas royalty payment obligations. The real property interests at issue are property located in the State of Oklahoma, and the payments at issue are governed by Oklahoma substantive law. Thus, any choice of law analysis would result in the application of Oklahoma law to the legal claims and, as such, there are no other states' laws implicated by this action, nor any choice of law issues that could affect the Court's commonality analysis here. *See id.* Third, Rule 23(a)(3)'s typicality requirement is satisfied because the same legal theories and fact issues underlie each Class Member's claims, and all Class Members suffered the same type of injury arising out of the same facts that can be proven by the same, common evidence. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010).

Finally, Rule 23(a)(4)'s adequacy of representation requirement is satisfied because there are no conflicts, minor or otherwise, between Class Representative and the other Class Members. **Ex. 3**, Class Rep. Decl.; *see Tennille v. Western Union Co.,* 785 F.3d 422, 430 (10th

Cir. 2015) ("Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.") (internal citation omitted). Class Representative and Class Counsel have prosecuted the Litigation vigorously, and Class Counsel is qualified to represent the Class here. *See* **Ex. 4**, Joint Counsel Decl. at 1–7, ¶¶ 1–46.

Additionally, Rule 23(b)(3)'s predominance and superiority requirements are satisfied here. *Tyson Foods*, 577 U.S. at 453; *Menocal*, 882 F.3d 905, 914–15 ("[T]he predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues") (citations omitted); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014); *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). The predominance requirement is met because the substantive claims are all common (Oklahoma law under Oklahoma choice-of-law principles) as are the aggregation-enabling issues of fact (chiefly, Defendant's common gas royalty underpayment methodology to Class Members). The common questions under the shared law predominate over and are more important than any potential individual issues that theoretically could arise in the Litigation. And the superiority requirement is satisfied because resolving the Litigation through the classwide Settlement is far superior to any other method for fairly and efficiently adjudicating these claims.

The Court properly certified the Settlement Class and, because Class Representative has proven that each of the requirements for certification under Rule 23(a) and (b)(3) remain satisfied, this finding should be confirmed with the final certification of the Settlement Class under Rule 23.

**2. The Court Should Grant Final Approval of the Settlement**

The Court should finally approve the Settlement as fair and reasonable. The Court has broad discretion in deciding whether to grant approval of a class action settlement. *Jones*, 741 F.2d at 324. "As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private

resources." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). As demonstrated below, each of the four factors identified by the Tenth Circuit weighs in favor of final approval.

### *A. The Settlement is the product of extensive arm's-length negotiations between experienced counsel.*

The fact that the Settlement was fairly and honestly negotiated by qualified, experienced counsel supports final approval. *See Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid."). The fairness of the negotiation process is to be examined with reference to the experience of counsel, the vigor with which the case was prosecuted, and any coercion or collusion that may have affected the negotiations.

Here, the Settlement is the product of extensive arm's-length negotiations between the Parties' experienced counsel, reached after submitting extensive mediation briefing and attending a day-long mediation session. There were also months of follow-on negotiations, presided over by former federal judge Layn Phillips, who has experience with dozens of oil-and-gas class actions like this one. *See* **Ex. 4**, Joint Counsel Decl. at 7, ¶¶ 40–43. The use of a formal settlement process supports the conclusion that the Settlement was fairly and honestly negotiated. *See Ashley v. Reg'l Transp. Dist.,* No. 05-CV-01567-WYD-BNB, 2008 WL 384579, at *6 (D. Colo. Feb. 11, 2008) (finding settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months). And the assistance of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008).

Additionally, Class Counsel has unique experience with oil-and-gas royalty underpayment and late payment class actions. Bradford & Wilson PLLC and Sharp Law LLP regularly

represent plaintiffs in oil-and-gas class actions, as well as other complex commercial and consumer class action litigation, and have obtained settlements in numerous underpayment or late payment class actions in Oklahoma state and federal courts.[4] Accordingly, Class Counsel are experienced and qualified counsel and represented the Settlement Class honestly and fairly during settlement negotiations. *See* **Ex. 4**, Joint Counsel Decl. at 1–7, ¶¶ 1–46. Further, Defendants are represented by highly experienced counsel who have worked extensively in oil-and-gas cases.

---

[4] *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. 16-CV-410-KEW (E.D. Okla. 2018); *Harris v. Chevron U.S.A., Inc.*, No.19-CV-355-SPS (E.D. Okla. 2019); *McNeill v. Citation Oil & Gas Corp.*, No. 17-CV-121-RAW (E.D. Okla. 2019); *Bollenbach v. Okla. Energy Acquisitions LP*, No. 17-CV-134-HE (W.D. Okla. 2018); *McKnight Realty Co. v. Bravo Arkoma*, No. 17-CV-308-KEW (E.D. Okla. 2018); *Speed v. JMA Energy Co., LLC*, No. CJ-2016-59 (Okla. Dist. Ct. Hughes Cnty. 2019); *Henry Price Tr. v. Plains Mktg.*, No. 19-CV-390-KEW (E.D. Okla. 2021); *Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021); *Johnston v. Camino Nat. Res., LLC*, No. 19-CV-2742-CMA-SKC (D. Colo. 2021); *Swafford v. Ovintiv Inc., et al.*, No. 21-CV-210-SPS (E.D. Okla.); *Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ (N.D. Okla.); *McKnight Realty Co v. Bravo Arkoma, LLC*, No. 20-CV-428-KEW (E.D. Okla.); *Rounds, et al. v. FourPoint Energy, LLC*, No. 20-CV-52-P (W.D. Okla.); *Hay Creek Royalties, LLC v. Mewbourne Oil Co.*, No. 20-CV-1199-F (W.D. Okla.); *Wake Energy, LLC v. EOG Res., Inc.*, No. 20-CV-183-ABJ (D. Wyo.); *Joanna Harris Deitrich Tr. A. v. Enerfin Res. I Ltd. P'ship, et al.*, No. 20-CV-084-KEW (E.D. Okla.); *Cowan v. Devon Energy Corp., et al.*, No. 22-CV-220-JAR (E.D. Okla.); *Kunneman Props. LLC, et al. v. Marathon Oil Co.*, No. 22-CV-274-KEW (E.D. Okla.); *Hoog v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-463 (E.D. Okla.); *Lee v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-516-KEW (E.D. Okla.); *Underwood v. NGL Energy Partners LP*, No. 21-CV-135-CVE-SH (N.D. Okla.). *Rice v. Burlington Res. Oil & Gas Co., LP*, No. 20-CV-431-GKF-SH (N.D. Okla.); *Dinsmore, et al. v. ONEOK Field Servs. Co., L.L.C.*, No. 22-CV-73-GKF-CDL (N.D. Okla.); *Dinsmore, et al. v. Phillips 66 Co.*, 22-CV-44-JFH (E.D. Okla.); *Ritter v. Foundation Energy Mgmt., LLC, et al.*, No. 22-CV-246-JFH (E.D. Okla.); *Cowan v. Triumph Energy Partners, LLC*, No. 23-CV-300-JAR (E.D. Okla.); *Indianola Res., LLC v. Calyx Energy, III, LLC*, No. 21-CV-235-GLJ (E.D. Okla.); *Dinsmore, et al. v. Scissortail Energy, LLC*, No. 22-CV-352-GLJ (E.D. Okla.); *Wright v. Devon Energy Prod. Co., L.P.*, No. 22-CV-213-KHR (D. Wyo.); *Dinsmore, et al. v. Oklahoma Petroleum Allies, LLC*, No. 23-CV-350-GLJ (E.D. Okla.); *Dinsmore, et al. v. Staghorn Petroleum II, LLC*, No. 24-CV-369-JAR (E.D. Okla.); *Blevins, et al. v. Continental Res., Inc.*, No. 22-CV-160-RAW-DES (E.D. Okla.); *Sagacity, Inc., et al. v. BCE-Mach III LLC*, No. 23-CV-39-RAW-GLJ (E.D. Okla.); *Kawulok v. JMA Energy Co., L.L.C.*, No. CJ-2019-50 (Okla Dist. Ct. Hughes Cnty.); *Navarro v. Anschutz Expl. Corp.*, No. 25-CV-93-ABJ (D. Wyo.).

Class Counsel's experience positioned them well to comprehensively examine the large amount of information and data produced in the Litigation, enabling the Parties to make informed decisions about the strengths and weaknesses of their respective cases. *See, e.g.*, *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *12 (N.D. Okla. Dec. 2, 2011). And Class Representative was directly involved in the negotiations and believe the settlement process resulted in an excellent recovery for the Settlement Class. *See* **Ex. 3**, Class Rep. Decl.; *see also* **Ex. 4**, Joint Counsel Decl. at 8, ¶¶ 50–51. Class Representative expended time and resources prosecuting the Litigation, including communicating with Class Counsel, providing documents and information, traveling to and attending the day-long mediation session in California, and participating in the negotiations that led to the Settlement. The Parties and their lawyers were well prepared for the serious and intelligent negotiations that ultimately led to the Settlement.

These facts demonstrate the Settlement resulted from serious, informed, and non-collusive negotiations between skilled and dedicated attorneys. The first factor supports final approval.

***B. Serious questions of law and fact exist, placing the ultimate outcome in doubt.***

The existence of serious questions of law and fact place the ultimate outcome of this Litigation in doubt, and such doubt "tips the balance in favor of settlement because settlement creates a certainty of some recovery and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-CV-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) (internal citations omitted).

Many factual and legal issues remain on which the Parties disagree—issues that would ultimately be decided by a court or a jury. Despite Class Representative's optimism regarding its chances at class certification and trial, the Parties vehemently disagree on numerous factual and legal issues, and Defendants deny any wrongdoing giving rise to liability for underpay-

ment of gas royalties. Settlement renders adjudication of these issues unnecessary and provides a guaranteed recovery in the face of uncertainty. Because this Litigation presents serious issues of law and fact that place the ultimate outcome in doubt, the second factor supports final approval of the Settlement.

### *C. The value of immediate recovery outweighs the mere possibility of future relief after long and expensive litigation.*

The complexity, uncertainty, expense, and likely duration of further litigation and appeals also support approval of the proposed Settlement. The immediate value of the $52.5 million cash recovery outweighs the uncertainty, additional expense, and likely duration of further litigation. The Settlement Class is "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *See McNeely*, 2008 WL 4816510 at *13. The Settlement represents a meaningful recovery for the Settlement Class without the risk or additional expense of further litigation. These immediate benefits must be compared to the risk that the Settlement Class may recover nothing after class certification, summary judgment, trial, and likely appeals, possibly years into the future. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006).

While Class Counsel is confident in their ability to prove the claims asserted, they also recognize liability is far from certain and many potential obstacles to obtaining a final, favorable verdict exist. Even if Class Representative was able to establish liability at trial, Defendants would have vigorously argued the Settlement Class damages are far less than the Settlement and raised a number of defenses to further whittle down the damages. Through the Settlement, the Settlement Class is guaranteed a cash payment without the attendant risks of further litigation.

Class Counsel is intimately familiar with the risks of proceeding with the Litigation because they have extensive experience prosecuting oil-and-gas class actions. *See* **Ex. 4**, Joint Counsel Decl. at 1–2, ¶¶ 1–3. Class Counsel believes the value of the Settlement outweighs

the risks of proceeding further with the Litigation. *Id.* at 8, ¶ 50. When the risks and uncertainties of continuing the Litigation are compared to the immediate benefits of the Settlement, it is clear the Settlement is fair, reasonable, and in the best interests of the Settlement Class. The third factor supports final approval of the Settlement.

***D. The Parties agree the Settlement is fair and reasonable.***

The fact that Class Representative and Defendants believe the Settlement is fair and reasonable supports final approval. Class Counsel and Class Representative only agreed to settle the Litigation after considering the substantial benefits the Settlement Class will receive, the risks and uncertainties of continued litigation, and the desirability of proceeding under the terms of the Settlement Agreement.

Class Counsel's judgment as to the fairness of the Settlement also supports final approval. "Counsels' judgment as to the fairness of the [settlement] agreement is entitled to considerable weight." *Childs*, 2011 WL 6016486 at *14 (citation omitted). Class Counsel believes the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and the Settlement is in the Class Members' best interests. *See* **Ex. 4**, Joint Counsel Decl. at 8, ¶ 50. This last factor fully supports the Court's final approval of the Settlement. Indeed, all four factors considered by courts in the Tenth Circuit support final approval of the Settlement.

**3. The Notice Method Used was the Best Practicable Under the Circumstances and Should be Approved**

The Court should approve the Notice given to the Settlement Class. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Also, Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In terms of due process, a settlement notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections." *Fager v. CenturyLink Comm'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016) (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). "The Supreme Court has consistently endorsed notice by first-class mail," holding "a fully descriptive notice . . . sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process." *Id.* at 1173. Here, the Notice campaign carried out by Class Counsel and the Settlement Administrator is substantially comparable to notice campaigns completed in other oil-and-gas class actions approved by district courts in Oklahoma, including this Court.

In its Preliminary Approval Order, the Court preliminarily approved the form and manner of the Notice disseminated by the Settlement Administrator, finding the Notices "are the best notice practicable under the circumstances; constitute due and sufficient notice to all persons and entities entitled to receive such notice; and fully satisfy the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23." Doc. 17 at 5, ¶ 8. The Court directed dissemination of the Notices in accordance with the Settlement Agreement and the Preliminary Approval Order. *Id.*

The Notice was mailed to over 30,000 potential Class Members and further diligence was conducted to ascertain proper mailing addresses. **Ex. 5**, Keough Decl. at 2–3, ¶¶ 4–9. In addition, the Court-approved Notice was published in July 2026 in two newspapers of local circulation, *The Oklahoman* (July 20, 2026 edition) and *The Tulsa World* (July 21, 2026 edition), as directed in the Preliminary Approval Order. *Id.* at 3, ¶ 10. The Notice materially informed Class Members about the Litigation, the Settlement, and the facts needed to make informed decisions about their rights. Also, the Notice, along with other documents germane to the Settlement, were posted on the website created for and dedicated to this Litigation, www.kunneman-devon.com.com, beginning on July 15, 2026. *Id.* at 4, ¶¶ 11–12. This website is maintained by the Settlement Administrator, where additional information regarding the Settlement can be found. *Id.*

In sum, the form, manner, and content of the Notice campaign were the best practicable notice, and their contents were reasonably calculated to, and did, apprise Class Members of the pendency and nature of the Settlement and afford them an opportunity to opt out or object. Therefore, the Court should grant final approval of the Notice given to the Settlement Class here.

**4. The Initial Plan of Allocation Should Be Approved**

The Court should also approve the proposed Initial Plan of Allocation, which is attached as **Exhibit 6**. Like the Settlement itself, a plan of allocation must also be approved as fair and reasonable. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1262 (citing *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 462). Where, as here, a plan of allocation is formulated by competent and experienced class counsel, the plan need only have a reasonable, rational basis. *Id.* As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable. *Id.*; *see also, e.g.*, *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. 11-CV-00029-KEW, Doc. 233 (E.D. Okla. Mar. 27, 2018) (Initial Plan of Allocation Order).

Class Counsel, together with Plaintiff's expert, have formulated the Initial Plan of Allocation by which Class Members will be reimbursed proportionately relative to the extent of their injuries for underpayment of natural gas royalties. Importantly, this is not a claims-made settlement, nor is it a settlement where a Class Member must take further action to participate. Instead, every Class Member who did not effectively opt out of the Settlement will receive a check or credit for their allocation of the Net Settlement Fund, subject to a *de minimis* threshold of $5.

Specifically, the Net Settlement Fund will be allocated to individual Class Members proportionately based primarily on the extent of post-production deductions and any other underpayments of natural gas royalties for the Claim Period. Pursuant to the SA, the Initial Plan of Allocation further assumes a reduction for Plaintiff's Attorneys' Fees, Litigation Expenses, Administration, Notice, and Distribution Costs, and a potential Case Contribution

Award, which amounts will ultimately be determined by the Court at the Final Fairness Hearing.

Class Representative and Class Counsel, with the aid of the Settlement Administrator, will allocate the Net Settlement Fund proportionately among all Class Members. A Distribution Check for each Class Member's allocation of the Net Settlement Fund will then be mailed to each respective Class Member's last known mailing address, using the payment history data produced. Returned or stale-dated Distribution Checks shall be reissued as necessary to effectuate delivery to the appropriate Class Members using commercially reasonable methods.

Because the proposed Initial Plan of Allocation was formulated by competent and experienced Counsel and is based on the type and extent of each Class Member's particular loss, the Court should approve it as fair, reasonable, and adequate.

## CONCLUSION

Class Representative and Class Counsel respectfully request that the Court enter the proposed Judgment, attached as **Exhibit 1**.[5] The proposed Judgment grants:

1. final certification of the Settlement Class;
2. final approval of the Settlement as fair, reasonable, and adequate, and in the best interests of the Settlement Class; and
3. final approval of the Notice to Class Members.

Class Representative and Class Counsel also respectfully request that the Court enter the proposed Initial Plan of Allocation Order, attached as **Exhibit 2**, to govern the allocation and distribution of the Net Settlement Fund to Class Members.

---

[5] **Exhibit 1** reserves space for the Court to rule on objections, if any, and to determine whether to approve requests for exclusion.

Respectfully Submitted,

*/s/ Reagan E. Bradford*
Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
Bradford & Wilson PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

*–and–*

Rex A. Sharp, OBA #11990
Scott B. Goodger, OBA #34476
SHARP LAW, LLP
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
rsharp@midwest-law.com
sgoodger@midwest-law.com

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

*/s/ Reagan E. Bradford*
Reagan E. Bradford